JAMES N. HORN ET AL. *v.* JOHN J. D. BEATTY.

1. LACHES. *Cancellation of deeds. Duress.*

> A complainant in a bill to cancel a conveyance for alleged fraud and duress who delays bringing the proceeding for nearly seven years after the date of the instrument, and who receives in the meantime four annual payments of the purchase money, is barred by laches.

2. SAME. *Case.*

> A decree canceling a conveyance for fraud and duress is not justified by evidence showing that two years after complainant acquired the half interest in the property constituting the subject of the conveyance and seventeen years before the filing of the bill, a mineral deposit of alleged medicinal value was discovered on the land, that during several years three different agencies attempted to exploit the sale of the mineral, but failed, and that it was not until long after complainant had conveyed his half interest to his partner, under a proposition to buy or sell at a given price, that the mineral was found to be valuable.

FROM the chancery court of Newton county.

HON. JAMES F. McCOOL, Chancellor.

Beatty, appellee, was complainant, and Horn and another, appellants, were defendants in the court below. From a decree in complainant's favor defendants appealed to the supreme court. The opinion states the facts of the case.

*S. A. Witherspoon,* and *Thomas Keeth,* for appellants.

The alleged fraud and duress were not proved, and the proceeding was barred by the laches of the complainant. *Davis* v. *Railroad Co.,* 46 Miss., 552; 10 Am. & Eng. Ency. Law (2d ed.), 337.

*J. R. Byrd,* for appellee.

The evidence fully sustained the charges of fraud and duress set out in the bill. The value of the mineral was fraudulently concealed by J. K. Horn, who thus secured a sale by his partner,

the complainant, at an outrageously inadequate price. 2 Pom. Eq. Jur., 902, 909, 927, 928. No objection was made to the testimony of complainant in the court below on the ground that it was in his own behalf and against the estate of a deceased person. It cannot be made 'for the first time in this court. *Jones* v. *Loggins,* 37 Miss., 546.

CALHOON, J., delivered the opinion of the court.

This is a bill filed in September, 1901, to cancel certain instruments, and for an account, and for the appointment of a receiver, because of fraud and duress. A demurrer to it was by the court overruled, and answer made, proof taken, and decree final for Mr. Beatty, the complainant below.

The pith of the whole matter is this: In 1882 Beatty got a conveyance from one J. K. Horn of an undivided one-half interest in a twelve-acre tract of land which was thought suitable for a gin and mill site, and the two proceeded to erect a proper building, and to install in it the necessary machinery, and to apply the power, and to operate the plant. Being doubtful of J. K. Horn's title, Beatty returned his conveyance, and received another executed by J. K. Horn and his wife, Sarah E. Horn, who is one of the appellants here, which conveyance is of date December 28, 1883. The plant was worked by J. K. Horn and Beatty with harmony and success for ten years, when J. K. Horn substituted the services of his son, J. N. Horn, the other appellant here, who, in 1893 or 1894, had some disagreement with Beatty about the trifling sum of ten dollars in current partnership distribution of earnings. This disagreement, as will be seen, was the real or ostensible beginning of ·a series of events which led up to a dissolution of the partnership, and a conveyance of February 4, 1895, by Beatty to the appellant, Mrs. Sarah E. Horn, who is the widow of the said J. K. Horn, who died January 2d of the same year, 1895. It is this conveyance of his which Beatty seeks to have canceled because procured by fraud and duress; and unless it was procured by fraud

or duress, Mr. Beatty has no case. If it was so procured, he must prevail, unless prevented by his own subsequent conduct or laches; and this sentence presents all the contentions of the parties to this litigation. The evidence, direct and circum-, stantial, preponderates against the charge of duress. But if it be the reverse, the appellee cannot avail of it, because, by his acceptance of the fruits of the contract and his long delay in making any utterance or doing any act in repudiation of his conveyance, the law presumes his ratification of it. On this we are content to rest on the text and notes in 10 Am. & Eng. Ency. Law (2d ed.), pp. 337, 338. It there appears that he who seeks to avoid a contract obtained by duress "must move prompt-ly, and not sleep on his right," and a delay of three years was · held sufficient to ratify a deed. In the case at bar the delay was from 1894 to 1901, about seven years, with the further pregnant fact that Beatty in the meantime accepted, without objection or protest, and when there was no pretense of duress, four an-nual payments, including the final payment of the purchase price, being the annual payments made in 1894, 1895, 1896, · and 1897. We dispose of the charge of fraud by simply saying that · from his own testimony Mr. Beatty shows plainly that fraud, if there was any, had nothing whatever to do with his execution of the deed to Mrs. Horn. It was the alleged duress alone, if anything wrong at all, which affected him, as is plain from his own statement as a witness. Mr. Beatty's bill was filed September 13, 1901. Seventeen years before then—in 1884—and two years after he became owner of the half interest in the twelve acres, he himself discovered what appeared to be a mineral deposit on it. This deposit developed into what is called "acid iron earth," claimed now to be a wonderful remedy for human ailments. It was only after there appeared to be money in it, after many years of exploitation by Horn and advertisement through three different agencies, that Mr. Beatty · filed his bill claiming to be the victim of concealed fraud and duress. From the history of the matter as set forth in the bill,

it would seem incredible that any sane man, in any degree alive to his own interest and to current matters of concern, could have been ignorant of the probable or possible value of the stuff. The evidence thoroughly satisfies us that no fraud or conceal-ment, if any there was, had any sort of influence in obtaining from him his deed in 1895. In fact, while the bill charges fraud and concealment, it is not charged that they operated to induce the execution of the deed, but that act is averred to be the result of fear of personal violence. In our view of the evi-dence, no fraud was practiced. Certain it is that it had no effect, and certain it is that the Horns made no effort to buy from Beatty for more than ten years after he discovered the mineral; and then, according to the disinterested testimony, the offer by them to Beatty was to buy or sell at a price stated, and he concluded to sell. Nobody appears who ever heard of Beatty complaining of fraud or duress until the stuff appeared to have value. The truth is, we think, he knew as much of the value of the deposit as the Horns knew. It was all quite problematical. He knew that many thought it of no value, and that some thought it of considerable worth. Barber thought it valuable, and told Beatty so. It was so thought by a druggist in a neigh-boring town, to whom Horn and Beatty took a sample, and so pronounced by an expert at St. Louis; all depending on ex-pensive exploitation. Beatty knew that Williams had been interested to exploit it, and that he failed after incurring large expense. After he made the deed he knew that two other men were successively interested with the same object, but he said not a word of fraud or duress until the last of these agents had good promise of success.

It would too much protract this opinion to elaborately detail the facts, nor do we consider the propriety of the action in over-ruling the demurrer to the bill. We look back over the record, and are thoroughly satisfied on the facts that Mr. Beatty should not prevail.

*Reversed, and decree here dismissing the bill.*